**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

In re:

| | |
|---|---|
| DENNIS E. HECKER, | Case No. 09-50779-RJK |
| Debtor. | Chapter 7 |

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ADV Pro. No. 09- |
| Plaintiff, | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF A PARTICULAR DEBT** |
| v. | |
| DENNIS E. HECKER, | |
| Defendant. | |

Plaintiff U.S. Bank National Association ("U.S. Bank"), for its complaint against Defendant Dennis E. Hecker ("Hecker"), states and alleges as follows:

**THE PARTIES**

1. U.S. Bank is a national banking association with a principal place of business in Minneapolis, Minnesota.

2. On information and belief, Hecker is an individual and a resident of the State of Minnesota, and the debtor in the above-captioned case.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This adversary proceeding arises under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).

4. Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **BASIS FOR NON-DISCHARGEABILITY**

### Hecker Made Misrepresentations Concerning U.S. Bank's Collateral

5.      U.S. Bank and Hecker are parties to a Credit Agreement dated October 17, 2008. A true and correct copy of the Credit Agreement is attached hereto as Exhibit A.

6.      To evidence his obligations under the Credit Agreement, Hecker executed a Promissory Note dated October 17, 2008, payable to U.S. Bank in the original principal amount of $7 million.  A true and correct copy of the Promissory Note is attached hereto as Exhibit B.

7.      To secure the payment and performance of his obligations under the Credit Agreement and the Promissory Note, Hecker and each of Jacob Properties of Minnesota LLC, Walden Investment Company, and WBDH Realty LLP—entities owned or controlled by Hecker (collectively, the "Hecker Pledgors")—executed Pledge Agreements dated October 17, 2008. True and correct copies of the Pledge Agreements are attached hereto as Exhibits C, D, E, and F).

8.      Under the Pledge Agreements, Hecker and the Hecker Pledgors pledged to U.S. Bank, and granted U.S. Bank a security interest in, partnership and ownership interests in WBDH Realty LLP, Eden Prairie Auto Properties LLP, and Jacob Holdings of Monticello LLC (the "Pledged Entities"), together with any certificates representing the Pledged Interests, all dividends, cash, instruments and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for any or all of the Pledged Interests, and all proceeds of any and all of the foregoing (including proceeds that constitute property of types described above) (collectively, the "Collateral").  *See* Pledge Agreements, § 2.

9. U.S. Bank perfected its security interest in the Collateral by filing financing statements (the "Financing Statements") with the Minnesota Secretary of State. True and correct copies of the Financing Statements are attached hereto as <u>Exhibits G, H, I, and J</u>.

10. In providing financial information to U.S. Bank in support of his request for the loans made pursuant to the Credit Agreement, Hecker warranted or caused to be warranted that he and the Pledged Entities owned their respective properties free and clear of all liens except certain first mortgage loans disclosed in that financial information. U.S. Bank relied on such warranty and financial information in extending credit to Hecker pursuant to the Credit Agreement.

11. Despite this warranty, Hecker in fact had granted second liens on the assets of the Pledged Entities to Chrysler. U.S. Bank did not become aware of these second liens until later in October 2008, after it had already loaned Hecker $7 million.

12. Hecker purposefully, and with intent to deceive U.S. Bank, did not disclose that he had granted second liens on the assets of the Pledged Entities to Chrysler.

13. U.S. Bank would not have provided financing to Hecker under the Credit Agreement had it known that he had granted second liens on the assets of the Pledged Entities to Chrysler.

14. Hecker never made a single principal or interest payment under the Credit Agreement.

15. Hecker is indebted to U.S. Bank under the Credit Agreement in the principal amount of $7 million, plus interest, fees, and costs.

<u>Hecker Misappropriated Vehicle Sale Proceeds</u>

16. In addition to its extension of credit to Hecker under the Credit Agreement, U.S. Bank provided financing to Walden Fleet Services II, Inc. ("Walden"), an entity owned and controlled by Hecker, pursuant to a Wholesale Lease Line and Security Agreement dated July 21, 2006 (the "Fleet Financing Agreement"). A true and correct copy of the Fleet Financing Agreement is attached hereto as <u>Exhibit K</u>.

17. Hecker personally guaranteed Walden's obligations to U.S. Bank under the Fleet Financing Agreement pursuant to a Guaranty dated September 10, 2007.

18. Under the Fleet Financing Agreement, U.S. Bank made advances to Walden to finance its purchase and lease of vehicles to third party lessees owned and controlled by Hecker.

19. The Fleet Financing Agreement required Walden to repay advances as and when vehicles were sold, "[n]o later than 3 Business Days following the receipt of proceeds from the sale of the Leased Vehicle for which the Advance was made." Fleet Financing Agreement, § 2.11(a).

20. Beginning in the second half of 2008, Hecker and/or Walden (at Hecker's direction) stopped paying sale proceeds on financed vehicles to U.S. Bank as required under Section 2.11(a) of the Fleet Financing Agreement and, instead, diverted or misappropriated those proceeds for other purposes.

21. On information and belief, Hecker and/or Walden (at Hecker's direction) diverted or misappropriated at least $4 million in proceeds belonging to U.S. Bank.

<u>Hecker May Not Have Disclosed, and May Have Misappropriated, Fleet Incentive Payments</u>

22. Under the Fleet Financing Agreement, U.S. Bank financed Walden's purchase of approximately 781 2008 Suzuki XL-7's (the "Suzuki Fleet Vehicles").

23. In providing financial information to U.S. Bank in support of its loans to Walden under the Fleet Financing Agreement, on information and belief, Hecker may have delivered or caused to be delivered to U.S. Bank a copy of the American Suzuki Motors Corporation 100% Guaranteed Depreciation Program Rules, which guaranteed the repurchase price of the Suzuki Fleet Vehicles based upon a depreciation schedule and the invoice cost of each vehicle.

24. Prior to its extension of financing under the Fleet Financing Agreement, for each of the Suzuki Fleet Vehicles, Hecker delivered or caused to be delivered to U.S. Bank copies of the vehicle invoices, which identified the vehicle invoice price and contained the following notation: "THIS VEHICLE IS NOT ELIGIBLE FOR ANY INCENTIVES OR HOLDBACK." A true and correct copy of a sample vehicle invoice is attached hereto as <u>Exhibit L</u>.

25. The Suzuki Fleet Vehicles potentially were subject to fleet incentives which Hecker did not disclose to U.S. Bank and of which U.S. Bank was not aware.

26. These fleet incentives potentially reduced the invoice cost of the Suzuki Fleet Vehicles, correspondingly reducing the repurchase price which Suzuki ultimately paid when the Suzuki Fleet Vehicles were sold after they were taken out of service.

27. U.S. Bank relied, and based its decisions to extend financing under the Fleet Financing Agreement, upon the invoice amount and the guaranteed repurchase price of the Suzuki Fleet Vehicles.

28. On information and belief, and without U.S. Bank's knowledge, Hecker may have collected and misappropriated (or may have caused the collection and misappropriation of) the fleet incentives for each of the Suzuki Fleet Vehicles, in a total amount to be established at trial.

5

29. As a result of Hecker's potential fraudulent misrepresentations, U.S. Bank made advances to Walden that were not covered by the value of its collateral, and has been damaged, in an amount to be established at trial.

## COUNT I
## 11 U.S.C. § 523(a)(2)(A)

30. U.S. Bank realleges paragraphs 1 through 29 herein by this reference.

31. Hecker obtained money, property, services, or an extension, renewal, or refinancing of credit from U.S. Bank by employing false pretenses, false representations of material facts that Hecker knew to be false at the time the representations were made, and actual fraud other than by a statement respecting his financial condition or an insider's financial condition.

32. The misrepresentations made by Hecker were made with the intention and purpose of deceiving U.S. Bank.

33. U.S. Bank actually and justifiably relied on Hecker's misrepresentations.

34. As a proximate result of Hecker's misrepresentations, U.S. Bank was damaged in an amount no less than $11 million, plus interest, fees, and costs.

35. The foregoing constitutes obtaining money, property, services, or an extension, renewal, or refinancing of credit through the use of false pretenses, false representations, or actual fraud under 11 U.S.C. § 523(a)(2)(A).

36. Accordingly, pursuant to 11 U.S.C. § 523(a)(2)(A), the above-described obligations of Hecker to U.S. Bank are excepted from any discharge received by Hecker in his bankruptcy case.

## COUNT II
## 11 U.S.C. § 523(a)(2)(B)

37. U.S. Bank realleges paragraphs 1 through 36 herein by this reference.

38. Hecker used statements in writing that were materially false respecting his financial condition or an insider's financial condition.

39. Hecker caused the statements in writing described above to be made or published with the intent to deceive U.S. Bank.

40. U.S. Bank, to whom Hecker is liable for such money, property, services, or an extension, renewal, or refinancing of credit, reasonably relied on the statements described above to its detriment.

41. Hecker caused the statements in writing described above to be made or published in order to obtain from U.S. Bank money, property, services, or an extension, renewal, or refinancing of credit under 11 U.S.C. § 523(a)(2)(B).

42. As a proximate result of Hecker's misrepresentations, U.S. Bank was damaged in an amount no less than $11 million, plus interest, fees, and costs.

43. The foregoing constitutes obtaining money, property, services, or an extension, renewal, or refinancing of credit through the use of a statement in writing that is materially false, respecting the debtor's or an insider's financial condition, on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied, and that the debtor caused to be made or published with intent to deceive under 11 U.S.C. § 523(a)(2)(B).

44. Accordingly, pursuant to 11 U.S.C. § 523(a)(2)(B), the above-described obligations of Hecker to U.S. Bank are excepted from any discharge received by Hecker in his bankruptcy case.

## COUNT III
## 11 U.S.C. § 523(a)(4)

45. U.S. Bank realleges paragraphs 1 through 44 herein by this reference.

46. Hecker knowingly, deliberately, intentionally, wrongfully and without justification or excuse (i) made or caused to be made false statements to U.S. Bank regarding the Collateral, knowing that U.S. Bank would rely on these statements in extending credit to him under the Credit Agreement; (ii) granted second liens on the assets of the Pledged Entities to Chrysler; (iii) diverted or misappropriated (or caused to be diverted or misappropriated) vehicle sale proceeds, fleet incentives, and other amounts under the Fleet Financing Agreement; and (iv) withheld information from U.S. Bank regarding the existence of the diverted or misappropriated funds.

47. As a proximate result of Hecker's conduct, U.S. Bank was damaged in an amount no less than $11 million.

48. The foregoing constitutes fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny under 11 U.S.C. § 523(a)(4).

49. Accordingly, pursuant to 11 U.S.C. § 523(a)(4), the above-described obligations of Hecker to U.S. Bank are excepted from any discharge received by Hecker in his bankruptcy case.

## COUNT IV
## 11 U.S.C. § 523(a)(6)

50. U.S. Bank realleges paragraphs 1 through 49 herein by this reference.

51. Hecker knowingly, deliberately, intentionally, wrongfully and without justification or excuse (i) made or caused to be made false statements to U.S. Bank regarding the Collateral, knowing that U.S. Bank would rely on these statements in extending credit to him

8

under the Credit Agreement; (ii) granted second liens on the assets of the Pledged Entities to Chrysler; (iii) diverted or misappropriated (or caused to be diverted or misappropriated) vehicle sale proceeds, fleet incentives, and other amounts under the Fleet Financing Agreement; and (iv) withheld information from U.S. Bank regarding the existence of the diverted or misappropriated funds.

52.  Hecker knowingly, deliberately, intentionally and wrongfully injured U.S. Bank and destroyed its interest in the amount of at least $11 million, plus interest, fees, and costs.

53.  As a proximate result of Hecker's misrepresentations, U.S. Bank was damaged in an amount no less than $11 million, plus interest, fees, and costs.

54.  The foregoing constitutes willful and malicious injury under 11 U.S.C. § 523(a)(6).

55.  Accordingly, pursuant to 11 U.S.C. § 523(a)(6), the above-described obligations of Hecker to U.S. Bank are excepted from any discharge received by Hecker in his bankruptcy case.

WHEREFORE, U.S. Bank prays for judgment against Hecker as follows:

1. For an order determining and adjudging that Hecker's debt to U.S. Bank, in the amount of no less than $11 million, plus interest, fees, and costs, is excepted from any discharge received by Hecker in his bankruptcy case pursuant to the provisions of 11 U.S.C. § 523(a)(2), (a)(4), and (6); and

2. For such other relief as this Court deems just and equitable.

Dated:  September 14, 2009                    DORSEY & WHITNEY LLP


                                              By: /e/ Monica Clark
                                              Thomas O. Kelly (# 189960)
                                              Todd Pearson (# 230935)
                                              Monica Clark (# 28211X)
                                              50 South Sixth Street, Suite 1500
                                              Minneapolis, MN 55402-1498
                                              Telephone: (612) 340-2600

                                              Attorneys for U.S. Bank National
                                              Association